## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**GENE GALES,  MDOC # 90619**                                    **PLAINTIFF**

**VERSUS**                                    **CIVIL ACTION NO. 1:07-CV-00485-LG-JMR**

**MIKE FARMER, SHERIFF;**
**FRANKLIN BREWER, WARDEN;**
**CHASTITY BROOME, NURSE;**
**SUSAN COOPER, NURSE;**
**AND STONE COUNTY BOARD OF**
**SUPERVISORS, ALL IN THEIR**
**INDIVIDUAL AND OFFICIAL CAPACITIES**                          **DEFENDANTS**

_____

### AMENDED REPORT AND RECOMMENDATION:
_____

This matter is before the Court on the Defendants' Motion[1] [104-1] for Summary

Judgment which is accompanied by a Memorandum in Support [100-1] and Statement of

Undisputed Facts [101-1].  The Court being fully advised in the premises, and after carefully

considering the pleadings filed as a matter of record, along with the applicable law, finds that the

Defendants' Motion for Summary Judgment should be granted.  Accordingly, Plaintiff's

Complaint in the above-captioned action should be dismissed.

### STATEMENT OF CASE:

Plaintiff Gene Gales ("Gales") was lawfully incarcerated at the Stone County Regional

Correctional Facility ("SCRCF") at all times relevant herein. Gales filed this *pro se* suit on

March 22, 2007, alleging that Sheriff Mike Farmer  ("Sheriff Farmer"), Warden Franklin Brewer,

---

[1] Defendants originally filed Motion [99-1] for Summary Judgment on December 31, 2007.  Upon advisement by the Court, Defendants refiled the present motion for summary judgement on January 2, 2008 as Motion [104].

("Warden Brewer"), Nurse Chastity Broome ("Nurse Broom"), and Nurse Susan Cooper ("Nurse Cooper") violated his constitutional rights.  *See* Complaint. On June 20, 2007, Plaintiff filed and was granted a Motion to Amend his Complaint to add the Stone County Board of Supervisors as a defendant.  *See* Amended Complaint.

Gales alleges that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by confining him under unreasonably dangerous conditions and denying him proper medical care.  Specifically, Gales claims that Defendants allowed standing water to accumulate on the floor of the prison bathroom which precipitated an injury when Gales slipped and fell on the premises. Further, Gales alleges that Defendants denied him proper medical treatment for the resulting injury to his right shoulder.  *See* Complaint.  Additionally, Gales alleges that  Defendants failed to return various documents to him in a timely manner, thereby hampering his ability to adequately pursue his legal claims.  *Id.*  The Court will interpret these allegations as a claim that Gales was unreasonably denied access to the courts.

On January 04, 2007, Gales slipped and fell while attempting to traverse a damp area in the restroom of the SCRCF.  During the fall, his right shoulder collided with a partition attached to the restroom wall.  *See* Complaint.  Gales notified Nurse Cooper of his injury the following day. *Id.*  At that time, Gales was seen by Nurse Cooper, who noted no acute distress and full range of motion with difficulty.  Gales was given Ibuprofen 200mg.  *See* Medical Records attached as Exhibit "Q" to Defendants' Memorandum Brief in Support of Motion for Summary Judgment.  On January 11, 2007, and again on January 17, 2007, Gales was provided with twenty-four tablets of Ibuprofen 200mg.  *Id.*  On January 19, 2007, Gales complained to Nurse Broome of continued pain in his right shoulder, and  he was arranged to be transferred to South Mississippi Correctional Institution ("SMCI") to be evaluated by a physician.  *See* Complaint.

On January 19, 2007, Gales was transferred to SMCI.  He was  given a preliminary evaluation by a nurse and then taken to x-ray. Dr. McCleave noted that the x-ray revealed no fractures or dislocation, and diagnosed Gales as suffering from contusion of the right shoulder. Gales was prescribed a sling and Ibuprofen 600mg three times a day for 30 days. Gales was transported back to SRCF.   *See* Medical Records attached as Exhibit "Q" to Defendants' Memorandum Brief in Support of Motion for Summary Judgment.

On January 22, 2007, Gales sent a  request to Warden Brewer asking to speak with someone in charge of SRCF about  his accident in the restroom and the injury to his shoulder. *See* Offender Request Form attached as Exhibit "1A" to Plaintiff's Complaint. Warden Brewer responded on January 24, 2007, and stated that he would speak with the nurse on duty and notify maintenance to remedy the situation in the restrooms. *Id.*

On January 24, 2007, Gales sent a written grievance to Warden Brewer, and complained of the water on the restroom floor, his subsequent injury, the improper treatment he received at SMCI, that the nursing staff ignored his continued complaints of pain, and that his requests for a second opinion had gone unanswered.  *See* Inmate Grievance Form attached as Exhibit "2B" to Plaintiff's Complaint.  Nurse Cooper responded to the complaint on February 06, 2007, and informed Gales that arrangements would be made to transport him back to SMCI  for reevaluation. *Id.*  Gales filed another grievance addressed to Sheriff Farmer on February 06, 2007.  *See* Inmate Grievance Form attached as Exhibit "4D" to Plaintiff's Complaint.  Warden Brewer responded on February 16, 2007, and stated that Gales had already received medical treatment and that maintenance had taken additional measures to prevent slipping in the restrooms.  *Id.*

On February 08, 2007, Gales was provided twenty-four tablets of Ibuprofen 200mg.  *See*

Medical Records attached as Exhibit "Q" to Defendants' Memorandum Brief in Support of

Motion for Summary Judgment.  On February 14, 2007, Gales was assigned an extra mat for his

bed as a follow up to his complaints.  *See* Medical Follow-Up Form attached as Exhibit "5E" to

Plaintiff's Complaint.   On February 15, 2007, and February 16, 2007, Gales was provided

twenty-four tablets Ibuprofen 200mg.  *See* Medical Records attached as Exhibit "Q" to

Defendants' Memorandum Brief in Support of Motion for Summary Judgment.

Gales sent a request for medical treatment on February 20, 2007, and he was evaluated by

Nurse Cooper.  Nurse Cooper noted that his arm was in a sling and warm to the touch, but that

Gales refused to lift his arm or allow Nurse Broom to touch it.  Nurse Cooper provided Gales

twenty-four tablets Ibuprofen 200mg. *Id.*

Gales sent another request for medical services on February 23, 2007, and was seen by

Nurse Cooper that same day.   Nurse Cooper noted that there was no swelling of Gales' shoulder,

but that it was tender to the touch.  Nurse Cooper further indicated that Gales would be referred

to an MD if there was no improvement in ten days.  *Id.*

On February 27, 2007, Gales was provided with twenty-four tablets Ibuprofen 200mg.

The following day, Nurse Broome noted on Gales medical chart that he continued to complain of

right shoulder pain, and that he had been provided his prescription. *Id.*

On March 02, 2007, Gales was provided with twenty-four tablets Ibuprofen 200mg and

placed on a list for follow-up treatment at SCMI.  *Id.*  Gales was transferred to SCMI on March

07, 2007. *See* Exhibit "G" attached to Defendants' Memorandum Brief in Support of Motion for

Summary Judgment.

Gales seeks compensatory damages totaling One Million dollars ($1,000,000), punitive

damages totaling One Million dollars ($1,000,000), and nominal damages totaling One Million

dollars ($1,000,000).  Additionally, Gales seeks injunctive relief in the form of repairs to remedy

the water on the restroom floor where he was housed at the Stone County Regional Correctional

Facility.

### STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.  Fed. R. Civ. P. 56(c).  "The mere existence of a factual dispute does not by itself

preclude the granting of summary judgment."  *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th

Cir. 1987).  "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  *Anderson v.*

*Liberty Lobby*, 477 U.S. 242, 248 (1986).  In other words, "[o]nly disputes over the facts that

might effect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

at 248.  Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient

to withstand summary judgment because the opposing party must counter factual allegations by

the moving party with specific, factual disputes; mere general allegations are not a sufficient

response.'"  *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting*

*Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the

light most favorable to the party resisting the motion.  *See Howard v. City of Greenwood*, 783

F.2d 1311, 1315 (5th Cir. 1986).  To survive summary judgment, the non-movant must

demonstrate the existence of a disputed issue of material fact.  *See Anderson v. Liberty Lobby*,

477 U.S. 242, 247-48 (1986).  To avoid the entry of summary judgment, the non-moving party

must bring forth significant probative evidence demonstrating the existence of a triable issue of fact.  *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights.  Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States.  *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981).  A plaintiff cannot succeed merely by showing any deprivation of his rights.  Section 1983 was intended to protect rights protected by federal law.  *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

## ANALYSIS:

In their Motion for Summary Judgment [104-1], Defendants assert that Gales failed to exhaust his administrative remedies, and therefore his section 1983 claims should be procedurally barred under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Alternatively, Defendants contend that Gales' official capacity claims against them are, in reality, claims against the Stone County Regional Correctional Facility.  Thus, since the SCRCF is a local governmental entity, Gales must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983. Defendants also assert that Gales' individual capacity claims are subject to a qualified immunity defense because not only has Gales failed to sufficiently establish that a violation of his Constitutional rights has occurred, but Defendants' conduct was objectively reasonable and Defendants were acting within the scope of their discretionary authority at all relevant times.

I . Failure to Exhaust Administrative Remedies:

Gales' complaint was filed pursuant to 42 U.S.C. § 1983, and is thereby subject to the Prison Litigation Reform Act ("PLRA"), which provides in pertinent part, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." 42 U.S.C. § 1997e(a) (emphasis added). The PLRA requires the plaintiff "to exhaust 'available' 'remedies,' whatever they may be. The failure to do so prevents him for pursuing a federal lawsuit at this time." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). "In *Booth v. Churner*, the Supreme Court decided that Congress intended a prisoner to invoke 'such administrative remedies as are available' in the prison, without regard to whether the grievance procedure affords money damage relief, before he may file suit contesting prison conditions in federal court." *Wright*, 260 F.3d at 358 (citation omitted).    The Supreme Court's finding was further summed up in a footnote: " Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative sources." *Booth v. Churner*, 532 U.S. 731, 741, n. 6. (2001).  The district court is not required to determine if the petitioner made a good faith effort to pursue his administrative remedies. *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998)(overruled on other grounds).

Gales filed an inmate grievance with Warden Brewer on January 24, 2007.  Warden Brewer interpreted the correspondence as a request for medical treatment and  forwarded the form to Nurse Cooper for response.  Nurse Cooper responded that Gales would be transferred to SMCI for further evaluation.  *See* Inmate Grievance Form attached as Exhibit "2B" to Plaintiff's Complaint.  Gales later filed a second Inmate Grievance to Sheriff Farmer on February 06, 2007.

Warden Brewer responded to Gales' grievance, noting that he had already received medical treatment and that maintenance had addressed the issues with the restroom floors.  *See* Inmate Grievance Form attached as Exhibit "4D" to Plaintiff's Complaint.  Gales filed suit on March 22, 2007.

At his deposition, Gales testified that he was familiar with administrative relief process, and had been through the procedure prior to his injury at SCRCF. *See* Deposition of Plaintiff attached as Exhibit "E" to Defendants' Motion for Summary Judgment.  In order to initiate Step One of the formal grievance process, an inmate must submit a letter to the SCRCF's Legal Claims Adjudicator. This letter must state, "This is a request for Administrative Remedy."  *See* Stone County Regional Correctional Facility Memorandum attached as Exhibit "J" to Defendants Motion for Summary Judgment.  Gales filed his first grievance with Warden Brewer rather than the SCRCF's Legal Claims Adjudicator. Further, Gales' grievance did not request an administrative remedy.  *See* Inmate Grievance Form attached as Exhibit "2B" to Plaintiff's Complaint.  Gales did not  follow the proper procedure, and therefore failed to initiate the formal administrative grievance process.  Gales should have been put on notice of his error when Nurse Cooper responded to his first grievance request. *Id.*

Gales second grievance also failed to adhere to the proper procedure, thereby failing to initiate a Step Two review by the Facility Administrator.   Gales addressed his second grievance form to Sheriff Farmer rather than the Legal Claim's Adjudicator.  Additionally, the request was not received within five days of Gales' receipt of the reply to his First Step attempt. *See* Stone County Regional Correctional Facility Memorandum attached as Exhibit "J" to Defendants Motion for Summary Judgment.  Gales never attempted to initiate Step Three of the grievance procedure. *Id.*  Because of Gales' procedural errors in initiating the formal grievance process,

Gales' Administrative Remedies file has no records pertaining to his incarceration at SCRCF. *See* Affidavit of R. Ken Fortenberry attached as Exhibit "O" to Defendants' Motion for Summary Judgment; *see also id.*, Affidavit of Eric Ward attached as Exhibit "P."

Upon a thorough review of the record and the pleadings before the Court, the Court finds that Gales has failed to avail himself of the available administrative remedies provided by SCRCF. Therefore, this Court finds that the instant 42 U.S.C. § 1983 claim should be dismissed for petitioner's failure to meet the PLRA's administrative remedies exhaustion requirement.

Although Gales' failure to exhaust available administrative remedies is dispositive as to his section 1983 claims, the Court will, out of an abundance of caution, proceed to review Gales' substantive claims against Defendants in both their official and individual capacities.

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the

office that the employee holds and not against the actual employee. *See Kentucky v. Graham*,

473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski*

are necessary in order to distinguish between individual violations by local employees and those

that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237

F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an

official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by
> its employees or agents. Instead, it is when execution of a government's policy or
> custom, whether made by its lawmakers or by those whose edicts or acts may fairly
> be said to represent official policy, inflicts the injury that the government as an entity
> is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level

employees, but may be held liable for constitutional violations committed pursuant to an official

policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the

municipality was the "moving force" behind the alleged violation of a constitutional right; he

must also establish that the municipality was "deliberately indifferent" to the known

consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir.

2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a

constitutionally protected right."). Deliberate indifference is an objective standard which

encompasses "not only what the policymaker actually knew but what he should have known,

given the facts and circumstances surrounding the official policy and its impact on the plaintiff's

rights." *Lawson*, 286 F.3d at 264.

The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in

establishing both the municipality's deliberate indifference and a causal link between the alleged

custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376

(S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237

F.3d at 580 (Stating that these two requirements "must not be diluted").

Gales claims that Defendants are liable under section 1983 by and through their

employment with the Stone County Regional Correctional Facility. The Court notes that Gales'

official capacity claims against the defendants are, in reality, a claim against the offices which

each occupied at the time of the alleged incidents and, ultimately, Stone County. To the extent

Gales brings this action against Defendants in their official capacity, he must establish a

constitutional violation, and in addition must satisfy the three requirements necessary to impose

municipal liability. First, that the SCRCF had an official policy, practice or custom which would

subject it to section 1983 liability; second, that the official policy is linked to the constitutional

violation(s); and third, that the official policy reflects the SCRCF's deliberate indifference to that

injury. *See Lawson*, 286 F.3d at 263.

With these principles in mind, the Court will now individually address each of Gales'

constitutional claims.

## II. Denial of Adequate Medical Treatment:

Gales claims that Defendants failed to provide him with proper medical care.

Specifically, Gales argues that he should have been allowed a follow-up examination or a second

opinion as to the source of his shoulder pain. However, other than the above mentioned

allegations of inadequate medical care, Gales presents no evidence that an official policy of the

SCRCF existed which violated his constitutional rights. The Court finds that such bare

allegations, without more, are simply insufficient to support a claim that there existed a policy or

custom which was the moving force behind any alleged constitutional violation. At best, Gales

assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claims against Defendants.

In addition to establishing the existence of an official policy, Gales must establish that the official policy is linked to the violation of a constitutional right. Gales maintains that Defendants ignored his complaints of right shoulder pain and denied him a follow-up examination. *See* Complaint and Amended Complaint. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999). Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). Disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Further, the law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). If a dispute exists as to whether appropriate medical treatment was given, exceptional circumstances must exist for the claim to be actionable pursuant to section 1983. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Additionally, medical records or medication, diagnosis, and sick calls may rebut an inmate's allegation of deliberate indifference. *Id.*

In regards to Gales' claim of inadequate medical care concerning his shoulder injury, there is no indication that Defendants had actual or subjective knowledge of any substantial danger or risk of serious harm, to which they responded with deliberate indifference.  The evidence submitted in support of Defendants' Motion for Summary Judgement clearly indicates that Gales received medical treatment for the injury to his shoulder.  Gales was seen by Nurse Cooper on January 05, 2007, which corresponds with Gales' first report of the accident. He was evaluated and provided with pain medication on this and numerous other occasions prior to filing any formal grievances. Additionally, Gales was seen by a physician at SMCI on January 19, 2007.  During this examination, Gales was taken to x-ray, which revealed no fractures or bony abnormalities.  His diagnosis was merely a contusion to the right shoulder, and he was provided both a sling and a prescription for pain medication.

Following his evaluation at SMCI, Gales filed both formal requests and written grievances in which he disagreed with the treatment being provided to him at SCRCF.  Warden Brewer passed the grievances on to Nurse Cooper for response, and  Nurse Cooper notified Gales that he would be placed on a list for follow-up treatment at SMCI.   In the interim, Gales was provided his prescribed pain medication on numerous occasions, an extra mat was provided for Gales' bed, and he was given at least two physical examinations by Nurses Cooper and Broome.

Gales' complaint regarding his medical treatment at best constitutes a disagreement with the treatment received and, at worst, sounds in medical malpractice.  Regardless, neither allegation is sufficient to state a constitutional claim under section 1983.  *See Norton,* 122 F.3d at 292; *Vanardo*, 920 F.2d at 321.   The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *Vanardo*, 920 F.2d at 321.  Defendants' treatment of Gales' injury does not rise to the level of

deliberate indifference.  Gales' shoulder injury was neither life threatening nor a serious medical condition, and Defendants adhered to the course of treatment prescribed by Gales' treating physician at SMCI. As a result, the Court finds that Gales has failed to establish that he was denied adequate medical care by Defendants.

Based on the foregoing analysis, the Court finds that Gales' complaints do not rise to the level of constitutional violations. Even if Gales were able to prove that such violations occurred, this Court finds no policy or custom on the part of the SCRCF existed which was the moving force behind any alleged constitutional violations.  Furthermore, this Court finds that Gales' allegations of inadequate medical care do not rise to the level of posing a substantial risk of serious harm to which Defendants responded with deliberate indifference.  Thus, there exists no basis for Gales' claims against the Defendants in their official capacities.

Gales' complaint additionally asserts claims against the Defendants in their individual capacities.  In response, Defendants plead the affirmative defense of qualified immunity.  In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right.  *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable.  Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).  Gales claims his constitutional rights were violated due to the inadequate medical treatment he received for his injured shoulder.

As previously noted, following Gales' injury to his shoulder on January 04, 2006, he was seen by Nurse Cooper. Nurse Cooper  noted that Gales' shoulder was capable of a full range of motion, but was tender.  She provided Gales with pain medication on several occasions.   After

continued complaints of pain, Gales was transferred to SMCI in order to be evaluated by a physician.  At SCMI, Gales was given a preliminary examination by a nurse and then taken to x-ray.  After consulting the x-ray, Gales' treating physician, Dr. McCleave, noted that Gales had suffered no fractures or bony abnormalities to his shoulder.  Gales was diagnosed as suffering from a contusion of the right shoulder, and prescribed both a sling and pain medication (600mg Ibuprofen, three times daily).

In the following weeks, Gales was provided with his pain medication as required, and seen by both Nurse Broome and Nurse Cooper on several occasions.  Additionally, Gales was provided with an extra mat for his bed.  Gales continued to complain of pain in his shoulder, and was placed on a waiting list for re-evaluation at SMCI.  He was transferred to the SMCI facility on March 07, 2007.

The Court does not find that a violation of any clearly established constitutional right occurred as it relates to the adequacy of Gales' medical treatment.  Gales was promptly seen by Nurse Cooper for an evaluation of his injury and provided pain medication.  Furthermore, he was evaluated by a physician at SMCI and provided both a sling and prescription for pain medication. Assuming, *arguendo*, that a violation of Gales' rights did occur, the Court finds that Defendants would still be entitled to qualified immunity because their treatment of Gales' injury was objectively reasonable.  Gales was provided medical care at both SCRCF and SMCI.   Further, the treatment provided by Defendants adhered to the guidelines prescribed by Gales' treating physician at SMCI.

In the case at hand, the Court finds that Gales has not presented any evidence sufficient to allege a violation of a clearly established constitutional right or any unreasonable conduct on the part of the Defendants. Thus, the Court finds that Defendants are entitled to qualified

immunity.[2]

III. Denial of Access to the Courts:

Gales complaint asserts claims for denial of access to the courts against Defendants in their official and individual capacities.  Gales argues that his inmate account sheet was not completed for two to three weeks, and this delay denied him access to the courts.  *See* Complaint. *See also*  Exhibit "E" pt. 2,  Deposition of Plaintiff attached to Defendants' Motion for Summary Judgment. However,  Gales fails to allege the existence of an official policy resulting in the violation of his constitutional rights. Gales further confirms the absence of an official policy at SCRCF by acknowledging that many inmates receive their account sheets in a more timely manner. *See id.*   The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged unconstitutional denial of access to the courts.

Even if Gales offered adequate proof of an official policy, the court finds that he was not unconstitutionally denied access to the courts.  This is evidenced by the numerous motions and documents filed by Gales in this Court since the alleged delay in processing his inmate account sheet.  In order for a plaintiff to succeed in an access to the courts claim, he must show actual injury, which includes evidence proving that the denial of legal resources hindered his efforts to pursue a non frivolous case.  *See Carter v. Lowndes County*, 89 Fed.Appx. 439; 2004 U.S. App.

---

[2] The Court also finds that to the extent Gales' complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-11, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed."  Miss. Code Ann. § 11-46-9(1)(m).  The Court finds that because Gales was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

Lexis 1063 (citing *Lewis v. Casey*, 518 U.S. 343, 349-51 (1996)). Thus, there exists no basis for Gales' claims against the Defendants in their official capacities.

To the extent that Gales's complaint asserts claims for denial of access to the courts against Defendants in their individual capacities, such claims are subject to the defense of qualified immunity.  In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right.  *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable.  Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable.  *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).

Gales claims that Defendants unconstitutionally denied him access to the courts by delaying the release of his inmate account sheet.  However, Gales cannot provide any evidence of actual injury to his case as a result of this delay.  The multitude of motions and filings on  record in the present case clearly indicates that Gales enjoyed full access to the courts.  Thus, the Court does not find that Gales suffered a violation of any clearly established constitutional right.  Assuming, *arguendo*, that a violation occurred, the Court still finds that Defendants would be entitled to qualified immunity because their conduct was objectively reasonable. The delay in processing his inmate account sheet was not unreasonably lengthy, nor of such a nature as to prejudice his ability to pursue his case.

Gales has wholly failed to establish the existence of a constitutional violation or any unreasonable conduct on the part of Defendants as a result of the three week delay in processing his inmate account sheet.  Thus, the Court finds that Defendants are entitled to qualified immunity.

IV. Conditions of Confinement:

Finally, the Court shall address Gales' claim that Defendants subjected him to unreasonably dangerous prison conditions in violation of the Eighth Amendment prohibition against cruel and unusual punishment.

The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (*quoting Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31-32 (1993). The Eighth Amendment imposes duties on prison officials, and require that they provide humane conditions of confinement, including adequate food, clothing, shelter, medical care. *Farmer*, 511 U.S. at 832. Prison officials must also "take reasonable measures to guarantee the safety of the inmates." *Id.* (*quoting Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984). "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling*, 509 U.S. at 33.

A prison condition constitutes an Eighth Amendment violation only when two requirements are met. First, there is an objective requirement that the alleged condition be so serious as to deprive the prisoner of the "minimal civilized measure of life's necessities," such as some basic need. Second, the prison official must have been deliberately indifferent to the inmate's health or safety. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995) (footnote omitted). The United States Supreme Court defined the deliberate indifference standard as follows:

> [A ] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  Accordingly, a prison official's failure to eliminate a substantial risk of harm which he *should have* perceived, but in fact *did not* perceive, cannot support an imposition of liability under the Eighth Amendment.  *Id.* at 838.

Gales argues that the restroom floors at the SCRCF were persistently covered in standing water, and therefore his conditions of confinement were unconstitutional.  *See* Complaint.  Gales states that his Eighth Amendment rights were first violated by the conditions of the restroom on September 08, 2006, which corresponds with his first day of imprisonment in the SCRCF.  *See* Exhibit "S" Plaintiff's Response to Defendants' Interrogatories attached to Defendants' Motion for Summary Judgment. However, Gales failed to notify Defendants of the situation in the restroom until January 24, 2007 - approximately 138 days after he claims his rights were first violated.  *See* Inmate Grievance Form attached as Exhibit "2B" to Plaintiff's Complaint.

The Court finds that Gales fails  to establish that his conditions of confinement at the SCRCF violated his constitutional rights under the Eighth Amendment. Specifically, Gales presents no evidence that  Defendants denied him a basic need or were deliberately indifferent to the existence of a substantial risk of harm.  First, the conditions of Gales' confinement do not indicate a deprivation of a basic need. While housed at SCRCF, Gales enjoyed air condition, television, access to medical care, and access to a daily shower. Furthermore, the occasional presence of open and obvious water on the floor of the prison restroom does not rise to the level of a substantial or excessive risk to inmate health or safety.

Additionally, Gales presents no evidence that Defendants were subjectively aware that the condition of the restroom floor posed an unreasonable risk of harm to the inmates at SCRCF. Gales failed to notify Defendants of the conditions of the restrooms until after his accident had occurred.  Upon being notified of Gales' accident in the restroom, Warden Brewer admitted no

knowledge of the conditions and promptly notified maintenance to remedy the situation. *See* Offender Request Form attached as Exhibit "2B" to Plaintiff's Complaint; *see also* Maintenance Memorandum attached as Exhibit "3C" to Plaintiff's Complaint.    Furthermore, the floors in the restrooms of SCRCF are mopped twice daily and subject to daily visual inspections.  Bobby Parker, the Maintenance Supervisor at SCRCF, testified that he had never seen nor received complaints of water standing on the floor of the restrooms.  *See* Exhibit "N," Affidavit attached to Defendants' Motion for Summary Judgment.  Finally, SCRCF passed an inspection by the Mississippi Department of Health on April 18, 2007, and no mention was made of any problem or violation with regard to the restroom floors.  *See* Exhibit "I"attached to Defendants' Motion for Summary Judgment.

The Court finds that Gales has failed to allege that the conditions of his confinement were sufficiently dangerous as to constitute a serious threat to his health or safety.  Further, Gales has failed to establish deliberate indifference on the part of the Defendants, because he has not alleged nor shown their actual, *subjective* awareness of the allegedly unconstitutional condition.  Thus, Gales' Eighth Amendment claim is legally insufficient to establish liability against Defendants and must be dismissed.

Finally, Gales' complaint against Defendants requests injunctive relief in the form of repairs or a remedy to the presence of water in the restrooms at SCRCF.  However, the record indicates that Gales was transferred to SMCI on March 07, 2007, thereby rendering his claims moot. *See Herman v. Holiday*, 238 F.3d 660,665 (5th Cir. 2001); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991).

## **CONCLUSION**:

Based on the forgoing analysis, this Court is of the opinion that Gales has failed to meet his

burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 claim.  Therefore, this Court finds the Defendants' Motion [104-1] for Summary Judgment should be granted, and that all claims against the Defendants should be dismissed with prejudice, both in their individual and official capacities.

In accordance with the Rules of this Court, any party, within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the ___8th___ day of July, 2008.

                                   s/ John M. Roper
                                   CHIEF UNITED STATES MAGISTRATE JUDGE